**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SAVOY LAUNDRY, INC. and Its Officer and Managing Agent, Stephen Vazzano, Respondents.**

**Docket 28119.**

United States Court of Appeals Second Circuit.

Motion Submitted Dec. 8, 1965.

Decided Dec. 16, 1965.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul Elkind and Melvin H. Reifin, National Labor Relations Board, Washington, D. C., for petitioner.

Jacob M. Mandelbaum, New York City, for respondents.

Before LUMBARD, Chief Judge, and MOORE and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge:

The National Labor Relations Board petitions for a writ of body attachment against respondent Stephen Vazzano, president and managing agent of respondent Savoy Laundry, Inc. (Savoy). The motion is granted.

On March 24, 1962, the National Labor Relations Board issued an order finding that Savoy had committed an unfair labor practice by discontinuing its wholesale shirt service department. The Board directed that Savoy reinstitute the department, reinstate discharged employees with back pay, and bargain collectively with Food Beverage and Express Drivers Local Union No. 145, I. B. T. (the Union). The Board petitioned to enforce this order, and on January 24, 1964, this court held that it was improper to order the reinstitution of a department so long discontinued; however, we agreed with the Board that Savoy had committed an unfair labor practice when it shut down that department and we enforced the back pay order and the order to resume bargaining, 2 Cir., 327 F.2d 370.

On December 21, 1964, upon motion of the Board, this court issued an order holding Savoy in civil contempt for refusing to bargain with the Union and for failing to produce back pay records. The court rejected Savoy's contention that it had no duty to bargain with the Union because the Union no longer represented a majority of the employees. The order required, *inter alia*, that Savoy file signed monthly statements with the clerk of the court showing what steps

had been taken to comply with the contempt decree.

On March 19, 1965, after about two months of bargaining, Savoy notified the Union that, on the basis of a petition by over one-half of the employees repudiating the Union, Savoy would no longer negotiate. On April 27, 1965, Savoy filed a sworn statement with this court averring that within seven days it would file an application with the Board to determine Savoy's rights and liabilities under the decree on December 21, 1964, in light of the fact that the Union no longer represented a majority of the employees.

Savoy failed to make such application with the Board and it has failed to file further sworn statements with this court as required by the aforesaid contempt decree. Consequently, the Board moved this court to issue a writ of body attachment against Stephen Vazzano. Upon consideration of that motion, this court received notice that Savoy was prepared to resume bargaining with the Union. After receiving further notice that three bargaining sessions had in fact been held, we issued an order, on November 30, 1965, which held that respondents had failed to purge themselves of contempt because they had failed to bargain in good faith with the Union and had failed to file sworn statements with this court. However, the petition for a writ of body attachment was deferred because respondents had at that time commenced bargaining.

On December 3, 1965, the Board submitted the instant motion, alleging that, although Savoy has met with the Union three times, it has refused to supply the Union with wage data pertaining to the employees in the collective bargaining unit, thus violating its duty to bargain in good faith. The Board's supporting affidavit also alleges that the employer's attorney-negotiator has stated that he will advise Savoy to reject all contract proposals because the Union does not represent a majority of the employees.

In opposing the instant motion, Savoy alleges that it is under no duty to supply the wage data to a Union that does not represent a majority of the employees; moreover, Savoy contends, the employees have engaged independent counsel who will apply to this court for clarification of the rights and obligations of the respective parties.

■ In all the proceedings before this court beginning with the original motion to adjudge Savoy in civil contempt, we have considered and rejected Savoy's contention that it has no duty to bargain with a union that no longer represents a majority of the employees. Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954), recognized that an employer may cease to bargain with a union that has lost its representational status more than one year after certification. However, a condition on the employer's right so to discontinue negotiations is that the union's loss of support is "not attributable" to a prior unfair labor practice of the employer. See N. L. R. B. v. Superior Fireproof Door & Sash Co., 289 F.2d 713 (2 Cir. 1961).

■ Here, most of the Union's membership was discharged when Savoy discontinued its wholesale shirt service department in violation of its obligations under the National Labor Relations Act. Obviously, therefore, the continued lack of a majority is "attributable" to Savoy's unfair labor practice; thus, Savoy has had a duty to bargain with the Union, even though that department was not reinstituted. We will assume for the purposes of this motion (1) that Savoy could purge itself of the unfair labor practice by bargaining with the Union for a reasonable length of time, and (2) that Savoy could raise the defense of sufficient bargaining in this application for a writ of body attachment. Nevertheless, we find that Savoy has not bargained with the Union for a sufficient length of time to purge itself of the original unfair labor practice and therefore that it must continue to bargain now even though the Union does not represent a majority of the employees. Compare Carpinteria Lemon Ass'n v. N. L. R. B., 274 F.2d 492 (9 Cir. 1960).

We recognize that our orders have in effect compelled the employees to accept a bargaining representative not of their current choice. However, the Board has the sole power to grant or deny a petition for a new election; it may properly deny such a petition on the ground that an outstanding unfair labor practice order has not been obeyed. See N. L. R. B. v. Consolidated Machine Tool Corp., 167 F.2d 470 (2 Cir. 1948). Savoy has never complied with either the original order or the contempt decree, and if the Board chooses not to order a new election until reasonable compliance has been secured, this court should not intercede.

Consequently, Savoy has no defense to the charge that it has failed to purge itself of contempt. In addition, Savoy has refused to file the sworn statements required by the decree of December 21, 1964, and it has contumaciously ignored the mandate to bargain in good faith thrice issued by this court. It cannot be contended at this late date that an employer can refuse to produce wage data and yet fulfill its duty to bargain in good faith. See, e. g., N. L. R. B. v. Yawman & Erbe Mfg. Co., 187 F.2d 947, 949 (2 Cir. 1951). Nor can the employer in good faith state during negotiations that it will sign *no* contract with the Union under any circumstances. Given Savoy's persistent recalcitrance, we find no alternative but to issue the writ of attachment against its managing officer and to confine Stephen Vazzano in custody until these specific acts of contempt have been purged and until Savoy has demonstrated its willingness to enter into fruitful good faith bargaining.

So long as Savoy fails to comply with the orders of the Board and this court to bargain in good faith for a reasonable period, and so long as the Board chooses not to order a new election, the Union will remain the bargaining representative of these employees, and the rights of the parties will remain unchanged. It is time for Savoy to end this anomalous situation and the continuing injustice to its employees by facing up to its duty to bargain with this Union.

The writ of attachment shall issue in accordance with the order accompanying this opinion.